# Comptroller General's Authority to Relieve Disbursing and Certifying Officials From Liability

Statutory provisions purporting to authorize the Comptroller General, an agent of Congress, to relieve certifying and disbursing officials in the executive branch from liability for illegal or improper payments are unconstitutional.

August 5, 1991

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
JUSTICE MANAGEMENT DIVISION

This responds to your request for our advice about a proposal to amend Department of Justice Order 2110.29B (Sept. 17, 1981), which prescribes the procedures for requesting a decision of the Comptroller General pursuant to 31 U.S.C. § 3529.[1] Decisions of the Comptroller General purportedly may relieve certifying and disbursing officers from liability for illegal or improper payments. *See* 31 U.S.C. § 3527(b)(2) (disbursing officials); *id.* § 3528(b) (certifying officials). In your view, this asserted authority of the Comptroller General raises a substantial separation of powers question in light of *Bowsher v. Synar*, 478 U.S. 714 (1986). You therefore believe that DOJ Order 2110.29B should be revised to instruct such accountable officers to seek the advice of the component's General Counsel (or of this Office) whenever they are unsure of the legality of paying a particular claim. We agree with you that the statutory mechanism is unconstitutional insofar as it purports to empower the Comptroller General to relieve executive branch officials from liability. Accordingly, we agree that DOJ Order 2110.29B should be revised along the lines you suggest.

## I. *The Statutory Framework*

31 U.S.C. § 3529 establishes a mechanism for certain executive branch officials to obtain the opinions of the Comptroller General. It states that

---

[1] *See* Memorandum for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Jams A. Sposato, General Counsel, Justice Management Division, *Re: Comptroller General's Decision Making Authority over the Executive Branch* (Apr. 16, 1990) (the "JMD Memo").

(a) A disbursing or certifying official or the head of an agency may request a decision from the Comptroller General on a question involving —

(1) a payment the disbursing official or head of the agency will make; or

(2) a voucher presented to a certifying official for certification.

(b) The Comptroller General shall issue a decision requested under this section.

Section 3529 is closely connected with the two immediately preceding sections of title 31, which purportedly authorize the Comptroller General to relieve disbursing and certifying officials from liability for mispayments. Section 3527(c) states that the Comptroller General, on his own initiative or on a written request of the head of an agency,

may relieve a present or former disbursing official of the agency responsible for a deficiency in an account because of an illegal, improper, or incorrect payment, and credit the account for the deficiency, when the Comptroller General decides that the payment was not the result of bad faith or lack of reasonable care by the official.

Section 3528(a) sets forth the responsibilities of certifying officials, among which is that of

(4) repaying a payment—

(A) illegal, improper, or incorrect because of an inaccurate or misleading certificate;

(B) prohibited by law; or

(C) that does not represent a legal obligation under the appropriation or fund involved.

Section 3528(b) declares that the Comptroller General

81

may relieve a certifying official from liability when the Comptroller General decides that . . . (i) the obligation was incurred in good faith; (ii) no law specifically prohibited the payment; and (iii) the United States Government received value for [the] payment.

The Comptroller General has taken the position that "where there is doubt as to the legality of a payment, the certifying officer's only complete protection from liability for an erroneous payment is to request and follow the Comptroller General's advance decision" under this statutory procedure. 55 Comp. Gen. 297, 300 (1975). The Comptroller General has also asserted that "in view of the certifying officer's statutory right to request and obtain an advance decision from the Comptroller General regarding the lawfulness of any payment to be certified we can see no reason for concluding that the agency's general counsel's conclusions of law regarding such payment are 'binding' on the agency's certifying officers." *Id.* In general, the Comptroller General is of the opinion that an accountable officer "is automatically liable at the moment of a loss or shortage. To mitigate this rule, however, Congress has provided a mechanism for relief. If the agency requests relief in conformity with the statutory conditions, and if [the] GAO agrees with the administrative determinations, relief will be granted." United States General Accounting Office, Office of General Counsel, *Principles of Federal Appropriations Law* 10-40 (1982); 14 Comp. Gen. 578, 583 (1935).

## II. *Analysis*

We accept the Comptroller General's construction of 31 U.S.C. §§ 3527, 3528, under which those statutes purport to authorize him in appropriate cases to relieve disbursing and certifying officers from liability for improper payments. But we believe that the statutes, so construed, are unconstitutional. In our view, the Comptroller General, as the agent of Congress, cannot issue interpretations of the law that are binding on the executive branch. Moreover, the Comptroller General's assertion of the power to relieve executive branch officials from liability for improper payments usurps the Executive's prosecutorial discretion and prevents the President from exercising his inherent supervisory authority over the conduct of executive branch officers. DOJ Order 2110.29B implements this unconstitutional statutory procedure. Accordingly, it must be revised.

In *Bowsher*, the Supreme Court, relying on the fact that Congress had retained removal power as to the Comptroller General, held that that officer was an agent of the legislative branch who "may not be entrusted with executive powers." 478 U.S. at 732.[2] The Court further held that the responsibilities

[2] The Court has recently reaffirmed *Bowsher*. *See Metropolitan Washington Airports Auth. v Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 275 (1991).

assigned to the Comptroller General under the statute at issue in that case "plainly entail[ed] execution of the law in constitutional terms." *Id.* at 732-33. The Court explained that

> [i]nterpreting a law enacted by Congress to implement [a] legislative mandate is the *very essence* of "execution" of the law. Under § 251 [of the Balanced Budget and Emergency Deficit Control Act of 1985, Pub. L. No. 99-177, 99 Stat. 1038], the Comptroller General must exercise judgment concerning facts that affect the application of the Act. He must also interpret the provisions of the Act to determine precisely what budgetary calculations are required. Decisions of that kind are typically made by officers charged with executing a statute. . . . [O]nce Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectly -- by passing new legislation. [Citation omitted.] By placing the responsibility for execution of the Balanced Budget and Emergency Deficit Control Act in the hands of an officer who is subject to removal only by itself, Congress in effect has retained control over the execution of the Act and has intruded into the executive function. The Constitution does not permit such intrusion.

*Id.* at 733-34.

Similarly, when the Comptroller General reviews the decision of a disbursing or certifying officer under 31 U.S.C. § 3529 in order to determine whether that decision complies with the law, the Comptroller General is necessarily interpreting the provisions of the underlying law. This is plainly an executive rather than a legislative function:[3] the Comptroller General is engaging in the "execution of the law in constitutional terms," and is taking decisions "typically made by officers charged with executing a statute," *i.e.,* the accounting officers themselves or the agency legal counsel on whom they rely. *See Bowsher,* 478 U.S. at 732-33. It follows that the Comptroller General, as an agent of the legislative branch, cannot constitutionally perform this function. Moreover, the Comptroller General is asserting the authority to bind persons in the executive branch to his construction of the law, even in cases in which the Attorney General or other executive branch legal officers may have reached contrary conclusions. But Congress may not determine the legal rights, duties and relations of persons outside the

---

[3] Even assuming *arguendo* that the functions assigned to the Comptroller General could somehow be characterized as "legislative" rather than "executive," the constitutional difficulty would remain intractable. "Congress may not delegate the power to legislate to its own agents." *Metropolitan Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.,* 501 U.S. at 275.

legislative branch except by conforming to the constitutional procedures of bicameral passage of a bill and presentment to the President.[4] A fortiori the Comptroller General may not make such legal determinations.[5]

Furthermore, in purporting to authorize the Comptroller General to relieve an executive branch official from liability for an improper payment, Congress has usurped the Executive's "exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974). "A lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.' Art. II, § 3." *Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (per curiam).[6] If the Comptroller General or any other agent of the legislative branch could relieve a governmental official from liability for mispayment of public moneys, then the executive branch would be deprived of the discretion to decide whether to bring suit to recover the funds from that official. The result would be an unconstitutional invasion of the Executive's responsibility to take care that the laws be faithfully executed.[7]

Finally, under the Constitution the President has general supervisory authority over the executive branch.[8] This, of course, is specifically true of accounting officers within the Executive.[9] Because the statutes here in question would prevent the President from bringing an action to correct what in his view was an illegal payment by an executive branch official if the

[4] *See Metropolitan Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. at 275; *INS v. Chadha*, 462 U.S 919, 952 (1983).

[5] This conclusion accords with our repeated view that in the event of a conflict between a legal opinion of the Attorney General and that of the Comptroller General, executive branch officers are bound to follow the opinion of the Attorney General. *See, e.g., Debt Obligations of the National Credit Union Administration*, 6 Op. O.L.C. 262, 263 & n.4 (1982).

[6] *See also Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (agency's decision not to prosecute or enforce, whether through criminal or civil process, is in general committed to its own absolute discretion; in particular, decision whether to indict "has long been regarded as the special province of the Executive Branch"); *Cuyahoga Valley Ry. v. United Transportation Union*, 474 U.S. 3, 7 (1985) (per curiam); *The Confiscation Cases*, 74 U.S. (7 Wall.) 454, 457 (1869); *The Jewels of the Princess of Orange*, 2 Op. Att'y Gen. 482, 486-92 (1831) (Taney, A.G.); I William Blackstone, *Commentaries on the Laws of England* 243 (William D. Lewis ed., 1897) ("though the making of laws is entirely the work of . . . the legislative branch, of the sovereign power, yet the manner, time, and circumstances of putting those laws in execution must frequently be left to the discretion of the executive magistrate").

[7] *Morrison v. Olson*, 487 U.S. 654 (1988), supports this conclusion. There the Court upheld the constitutionality of the Independent Counsel, a prosecutor whose removal was "squarely in the hands of the Executive Branch." *Id.* at 686; *see also id.* at 692 n.31 (civil enforcement powers analogous to criminal prosecutorial powers vested in agencies whose officers are removable by the President for cause). As explained above, the power to remove the Comptroller General lies with Congress.

[8] *See Morrison v. Olson*, 487 U.S. at 692, 696; *Myers v. United States*, 272 U.S. 52, 135 (1926); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981); *Inspector General Legislation*, 1 Op. O.L.C. 16, 17 (1977).

[9] *See* The Federalist No. 72 at 369 (Alexander Hamilton) (Max Beloff ed., 1987) ("the preparatory plans of finance, the application and disbursement of the public monies, in conformity to the general appropriations of the legislature . . . these, and other matters of a like nature, constitute what seems to be most properly understood by the administration of government. The persons, therefore, to whose immediate management these different matters are committed, ought to be considered as the assistants or deputies of the chief magistrate [*i.e.*, the President]; and, on this account, they ought . . . to be subject to his superintendence").

Comptroller General opined that the payment was not illegal, they would impair the President's authority to supervise the conduct of his subordinates.

Accordingly, we conclude that the Comptroller General cannot constitutionally relieve disbursing and certifying officers from liability. Because DOJ Order 2110.29B is based on the assumption that the Comptroller General has such authority, it must be rescinded.

We agree with your suggestion that a revised DOJ Order should instruct accountable officers to seek the advice of their components' general counsels whenever they are in doubt about the legality of paying or certifying a particular claim. (In cases raising significant or novel legal questions, the component general counsels are free to seek an opinion from this Office.) Furthermore, in the future, the Department should decline to process requests from accountable officials for Comptroller General opinions purporting to relieve them of liability; and the revised DOJ Order should advise such officials that it will not necessarily decline to bring suit for the recovery of funds because the Comptroller General has purported to relieve an official of liability. In addition, the revised DOJ Order should state that this Department will not bring suit against an official to recover a payment if that official has obtained from his or her component general counsel (or, where appropriate, from this Office) an opinion advising him or her that the payment could legally be made.[10] Finally, we agree with your recommendation that the revised DOJ Order should be signed by the Attorney General.

JOHN O. McGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[10] Under 5 U.S.C. § 5512(a), the pay of an accountable official "in arrears to the United States shall be withheld until he has accounted for and paid into the Treasury of the United States all sums for which he is liable." In our view, this provision could not be applied if this Department had determined that the official was *not* liable.